## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY LYNN WOLF, | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | NO. 14-5323 |
| | : | |
| CAROLYN COLVIN, | : | |
| **Acting Commissioner of Social Security** | : | |
| **Defendant.** | : | |

## M E M O R A N D U M

**Stengel, J.**                                                **December 21, 2015**


Plaintiff, Stacy Lynn Wolf, filed this civil action requesting review of the Social

Security Commissioner's final decision that she was not eligible for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security

Act.  I referred the matter to Magistrate Judge Linda K. Caracappa, who recommends that

I deny plaintiff's request for review. The plaintiff filed objections to the report and

recommendation and the Commissioner responded. For the reasons that follow, I will

adopt the report and recommendation.

### I.    BACKGROUND

Judge Caracappa summarized the factual and procedural history as follows:

> Plaintiff is a fifty year old female, born on July 5, 1964. (Tr.
> 53). Plaintiff completed the eleventh grade. (Tr. 55). Plaintiff
> has past relevant work as a production assembler, store
> laborer, and industrial truck operator. (Tr. 36-37).
> On February 15, 2010, plaintiff filed an application for DIB,
> alleging disability since November 26, 2009. (Tr. 244-245).
> On October 27, 2010 plaintiff's application was denied at the

state level. (Tr. 128-131). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 134-135).

A video hearing before ALJ Theodore Burock took place on September 15, 2011, and plaintiff and an impartial vocational expert testified. (Tr. 50-82). On October 27, 2011, the ALJ issued an opinion finding plaintiff was not under a disability, as defined by the Social Security Act. (Tr. 108-123). On April 19, 2013, the Appeals Council remanded plaintiff's DIB claim to ALJ Burock for further consideration of plaintiff's mental impairments and plaintiff's residual functional capacity. (Tr. 125-126).

A second video hearing before ALJ Burock took place on November 14, 2013. (Tr. 85-102). Plaintiff had filed a SSI application, with a protective filing date of February 15, 2010, and that SSI application was escalated to join ALJ Burock's second decision. (Tr. 21). On January 28, 2014, the ALJ issued a second opinion finding plaintiff was not under a disability, as defined by the Social Security Act. (Tr. 21-44). Plaintiff filed a request for review, and on July 31, 2014, the Appeals Council denied plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). Plaintiff subsequently appealed that denial to this court.

Report and Recommendation, Doc. No 12, 1-2. On appeal, plaintiff contended that the

ALJ's decision failed to: (1) find that her posttraumatic stress disorder, panic disorder,

social phobia and bipolar disorder were not severe impairments; (2) adequately consider

her obesity; (3) include additional mental and physical limitations in the residual

functional capacity ("RFC") finding; and (4) credit plaintiff's subjective complaints. Id.

at 12.

In her report, Judge Caracappa notes that "[t]he Commissioner's findings must be

affirmed if they are supported by substantial evidence." Id. (citing 42 U.S.C. § 405(g);

Richardson v. Perales., 402 U.S. 389, 401 (1971)). She also notes that "'substantial

2

evidence is more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'"  Id. at 2 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, she concludes that "[t]he role of this court is to determine whether there is substantial evidence to support the Commissioner's decision."  Id. at 12 (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993)).

Judge Caracappa recommends that I deny plaintiff's request for review, because the ALJ's decision was supported by substantial evidence.  Id.  The plaintiff timely filed objections.  See Doc. No. 13.

## II.      STANDARD OF REVIEW

I review de novo those portions of the magistrate judge's report to which a timely and specific objection is made. 28 U.S.C. § 636(b)(1); see also Goney v. Clark, 749 F.2d 5, 6 (3d Cir.1984).  Pursuant to 28 U.S.C. § 636(b)(1), I "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  Id.; see also United States v. Raddatz, 447 U.S. 667, 676 (1980)("Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.").

## III.     DISCUSSION

Plaintiff objects to the ALJ's rejection of three medical opinions offered by treating or examining sources.  Doc. No. 13 at 1.  In doing so, she raises two arguments. First, the plaintiff contends that Judge Caracappa improperly affirmed the ALJ's decision to reject the opinions of two treating medical professionals – Dr. Taylor and Nurse-Practitioner Dussinger ("Dussinger") – concerning her mental impairments.  Id. at 1-4. Second, plaintiff argues that Judge Caracappa also improperly affirmed the ALJ's

decision to reject the medical opinions provided by two treating medical professionals –

Dr. Mallozzi and Dussinger – regarding plaintiff's physical impairments.  Id. at 4-6.

While the ALJ must afford great weight to the opinion of a treating physician, this

deference is not without limitation.  See Mason v. Shalala, 994 F.3d 1058, 1067 (3d Cir.

1993).  It is ultimately the ALJ, however, who determines what weight should be

accorded to the medical opinions on the record, as "when the medical testimony or

conclusions are conflicting, the ALJ is not only entitled but required to choose between

them.  Cotter v. Harris, 642 F.3d 700, 705 (3d Cir. 1981).

Thus, when "the opinion of a treating physician conflicts with that of a non-

treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject

evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317

(3d Cir. 2000)(quoting Plummer v. Apfel. 186 F.3d 422, 429 (3d Cir. 1999)).  Nor may

an ALJ make "speculative inferences from medical reports" or reject a treating

physician's opinion "due to [the ALJ's] own credibility judgments, speculation or lay

opinion." Id. at 317-18 (internal quotation marks and citation omitted); see also Mason,

994 F.2d at 1067 ("An ALJ may not reject [a physician's findings] unless he first weighs

them against other relevant evidence and explains why certain evidence has been

accepted and why other evidence has been rejected.") (internal quotation marks and

citation omitted).

a. **Substantial evidence supports the ALJ's decision to reject Dr. Taylor and Dussinger's medical opinions regarding the plaintiff's mental impairments**

Here, the ALJ assigned little weight to the opinion of plaintiff's examining physician Dr. Taylor because he found that the objective medical findings in the record consistently demonstrated that plaintiff's thought process "[wa]s logical and goal directed, she [wa]s cognitively intact[,] and her symptoms ha[d] improved with individual psychotherapy." See Tr. 33.  Although plaintiff attempted suicide in December of 2011, she improved considerably in the months following that attempt.  See id. at 30, 36.  The ALJ also found that the evidence demonstrated that by October 2013, the plaintiff's mood was better, and she was able to watch her grandson, travel to visit a friend, and planned to live independently of her daughter. See id. at 36.

The ALJ also rejected Dussinger's opinion because she was not a psychiatric professional and because the record consistently demonstrated that plaintiff's "mental status, judgment and affect [we]re normal." See id. at 35.  Thus, the ALJ explained his decision to reject the opinions of the plaintiff's two treating medical professionals.

Furthermore, the ALJ explained why he credited the evidence of Judy Rupp, M.A. ("Rupp"), who examined plaintiff for the first time in May 2012.  At that initial visit, Ms. Rupp assessed plaintiff's Global Assessment of Function ("GAF") score at 60. See id. at 31.  Upon follow-up examination in July 2012, Ms. Rupp noted that plaintiff was "calmer" and that she was "responding well to interventions."  Id.  By November 2012, Ms. Rupp noted that "claimant's mood and affect [were] bright, she [was] focusing on family and friends and she is less depressed, responding well to treatment."  Id.  Ms.

5

Rupp continued to see plaintiff and at the their last documented visit together in October 2013, Ms. Rupp noticed that plaintiff's mood was better when she was out of the house and that plaintiff was making plans to live independently. Id.

Ultimately, the ALJ concluded that the plaintiff's GAF score, which was assessed at 55-60 and demonstrated that the plaintiff has moderate limitations in social functioning, was supported by the medical evidence in the record. See id. at 32. The ALJ also noted that the most recent evidence showed that plaintiff was improving with medications, denied ongoing symptoms, and showed a normal mental status. Id. The ALJ further credited evidence from the state agency physiatrist consultant, who prepared a psychiatric review that noted that plaintiff had moderate limitations. Id. at 34. This review was consistent with Ms. Rupp's findings. See id. Therefore, the ALJ adequately explained his reasons for rejecting the treating medical experts' opinions while crediting the opinions of other medical experts. As such, plaintiff's first objection must be denied.

### a. Substantial evidence supports the ALJ's decision to reject Dr. Mallozzi and Dussinger's medical opinions regarding plaintiff's physical impairments

The ALJ assigned little weight to Dr. Mallozzi and Dussinger's opinions regarding plaintiff's physical impairments. Both were, however, the plaintiff's treating medical professionals. The ALJ assigned little weight to Dr. Mallozzi's opinion because the ALJ found that the record consistently demonstrated that the plaintiff "ha[d] 5/5 muscle strength throughout her extremities, she ha[d] a good range of motion of the lower extremities[,] and she [wa]s capable of performing various activities of daily living including going for walks and providing care for her young grandson." See id. Further,

6

Dr. Mallozzi consistently observed that plaintiff appeared "comfortable" during subsequent visits. See id. at 29.

The ALJ also explained his decision to reject Dussinger's opinion.  He noted once more that the record showed that the plaintiff consistently had 5/5 muscle strength.  Id. at 35.  Furthermore, in June of 2013, Dussinger found that the plaintiff had a "normal range of motion and stability in her right upper extremity." See id. at 30.  The evidence demonstrated that while at times the plaintiff complained of lower back pain, she responded well to treatment. See id. at 29.  The record also demonstrated that doctors advised plaintiff "to consider getting another job that requires sitting rather than walking all day or with heavy lifting." Id.

After rejecting Dr. Mallozzi and Dussinger's opinions, the ALJ explained his reasoning for crediting the medical evidence of the plaintiff's physical impairments provided by the state agency medical consultant, Dr. Novin.  Dr. Novin concluded that the plaintiff was able to stand and walk for up to two hours a day and able to sit for up to six hours a day during an eight hour workday. See id. at 32.  Additionally, the ALJ noted several inconsistencies between plaintiff's allegations, as the medical record demonstrated that plaintiff possessed 5/5 muscle strength in her extremities and could perform sedentary tasks.  Id.  The record also demonstrated that the plaintiff's medical treatment consisted primarily of medication management.  Id. at 35.  The plaintiff had neither participated in physical therapy nor undergone surgical procedures related to her alleged neck and back impairments. See id. While plaintiff alleged that she needed a walker and a cane to ambulate, neither the walker or cane had been prescribed to

7

plaintiff.  Id. at 36. Thus, the ALJ concluded that "the claimant [was] no more than partially credible in her subjective allegations as they relate to her functional capabilities."  Id. at 32; see also id. at 36 ("The undersigned does not find the claimant to be entirely credible regarding the extent and severity of her physical impairments and limitations.").  Because the ALJ adequately explained his reasons for rejecting the treating medical experts' opinions regarding her mental impairments, the plaintiff's second objection must also be denied.

## IV.    CONCLUSION

After considering the plaintiff's objection and a de novo review of Judge Caracappa's report and recommendation, I conclude that the ALJ's determinations are supported by substantial evidence.  As such, I will overrule the plaintiff's objections and approve and adopt Judge Caracappa's report and recommendation.

An appropriate order follows.